UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAKAR INTERNATIONAL, INC.,

                Plaintiff,

- against -

CELISTICS HOLDINGS, S.L.,

                Defendant.

17 cv. 175

**COMPLAINT**

Plaintiff SAKAR INTERNATIONAL, INC., by and through its undersigned counsel, Wachtel Missry LLP, as and for its Complaint against defendant CELISTICS HOLDINGS, S.L., alleges the following:

**PARTIES**

1.    Plaintiff SAKAR INTERNATIONAL, INC. ("Sakar" or "Plaintiff") is a New York corporation, having an address at 195 Carter Drive, Edison, New Jersey 08817.

2.    Upon information and belief, defendant CELISTICS HOLDINGS, S.L. ("Celistics" or "Defendant") is a corporation organized under the laws of the Kingdom of Spain, having its principal place of business at Plaza de Colón, no. 2, Torre I, Planta 15, 28046, Madrid, Spain.

**JURISDICTION**

3.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) and (c)(1), because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.    Venue is proper in this District because the parties agreed that the adjudication of any dispute between them shall be brought in this Court.

## STATEMENT OF FACTS

5.      Plaintiff is in the business of importing and selling, at wholesale, consumer electronics products pursuant to various licensing arrangements.

6.      Upon information and belief, Defendant is in the business of providing logistics and distribution services for the consumer electronics industry.

7.      On or about March 2, 2015, Sakar and Celistics entered into that certain Exclusive Distributorship Agreement (the "Distributorship Agreement"), which broadly provided that Celistics would act as Sakar's exclusive authorized distributor for specified electronics products (the "Products") in certain countries in Central and South America as well as Mexico (the "Territories").  The Distributorship Agreement provides that it shall be governed by New York law. (A copy of the Distributorship Agreement is annexed hereto as **Exhibit A**).

8.      Pursuant to the Distributorship Agreement, Celistics was responsible for, *inter alia*, sourcing logistics services, promoting all licensed Products and categories, revising customer orders, processing purchase orders, handling customer inventory needs, and handling receiving of Products from Sakar.

9.      The Distributorship Agreement further provided that Celistics would submit purchase orders ("P.O.'s") to Sakar identifying, *inter alia*, a description of the products, quantity, price, and payment terms.

10.     Sakar would issue an invoice to Celistics upon each shipment of Products to Celistics.  The Distributorship Agreement provides that all invoices shall be paid by Celistics between 60 and 90 days from the date of the invoice.

11. On September 9, 2015, Celistics issued two purchase orders to Sakar for a total of approximately $3.2 million. Sakar shipped to Celistics the Products that Defendant ordered. Payment for the two purchase orders was due within 90 days, or approximately January 9, 2016.

12. On or about the third week of January, 2016, Defendant demanded a meeting with Plaintiff to discuss the open invoices which Defendant was refusing to pay.

13. On February 12, 2016, Plaintiff's vice-president, Mr. Sammy Saka, was attending an industry trade show in New York City. While at the trade show, Mr. Saka was contacted by representatives of Celistics concerning the Distributorship Agreement and the open invoices.

14. Celistics advised Mr. Saka that they were submitting, via email, a proposed amendment to the Distributorship Agreement that had been prepared by Celistics (the "Amendment") and which must be signed that day. (A copy of the Amendment is annexed hereto as **Exhibit B**).

15. Moreover, Celistics' representatives advised Mr. Saka that should he refuse to immediately sign the Amendment, Defendant would immediately cease doing business with Sakar and would leave Plaintiff with a multi-million dollar receivable.

16. Celistics also threatened Mr. Saka that it would flood the market, at prices equivalent to cost, with the unpaid merchandise potentially causing irreparable harm to Sakar's business and its product pricing around the globe. As a result, Mr. Saka was forced to sign the Amendment that day because under the circumstances he had no other alternative.

17. The Amendment essentially reversed the nature of the business relationship between the parties in numerous ways. First, whereas previously expenses for logistics and warehousing the Products that Sakar shipped to Celistics was Defendant's responsibility, pursuant

to the Amendment that cost was to be borne by Sakar. Celistics has attempted to apply this even to prior orders that shipped before the Amendment was signed.

18. Second, whereas previously Celistics was required to pay invoices upon their due date regardless of whether Defendant had sold the merchandise, the Amendment permitted Defendant to continue to withhold payment on the open invoices for any merchandise that Defendant had not actually sold.

19. Third, the Amendment required Sakar to bear the cost of any discounts that Celistics would apply to the merchandise in its efforts to sell the merchandise.

20. Subsequently, Celistics attempted to return the lion's share of certain Products shipped by Sakar during 2016. Indeed, of the $3,666,289 in Products shipped by Sakar to Celistics for sale in Mexico, Defendant has attempted to return $3,255,134 of these Products.

21. To make matters worse, Celistics is also seeking to collect certain "Consignment Costs" in the amount of $647,555, allegedly incurred by Defendant through July 2016 with respect to these Products, consisting of freight, freight insurance, warehousing, custody, etc. Because of these alleged costs, Celistics now claims that there is a balance due in its favor in excess of $200,000.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Covenant of Good Faith and Fair Dealing)

22. Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

23. The Distributorship Agreement, like all contracts under New York law, carries with it an implied duty of good faith and fair dealing on the part of all parties to it. In particular, Defendant has a duty not to take steps to deprive Plaintiff of the ability to realize the value of the exclusive distributorship relationship between the parties.

24.     By engaging in the conduct set forth above, Defendant violated the implied duty of good faith and fair dealing due and owing under the Distributorship Agreement.

25.     In summary, Defendant improperly acted which collectively has had the result of vitiating the goals of the Distributorship Agreement. Defendant failed to comply with its obligations to act as Plaintiff's exclusive distributor and promote the sales of the Products in the Territories. Indeed, the sheer quantity of the Product returns coupled with the excessive Consignment Costs leads to the conclusion that Defendant either had no intention of promoting the sales of these Products or utterly failed to comply with its obligations as Distributor, which has wholly undermined the Agreement.

## AS AND FOR A SECOND CAUSE OF ACTION
(Rescission)

26.     Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

27.     Defendant's threats to Mr. Saka, and its demand that he immediately sign the Amendment, as set forth above, were unlawfully made without any legal basis or justification therefor.

28.     As a result of Defendant's conduct, Plaintiff was under economic duress when it entered into the Amendment.

29.     Accordingly, the Court should issue a declaration rescinding the Amendment and declaring that the Amendment is *void ab initio*.

30.     Plaintiff does not have an adequate remedy at law.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

(i) on the first claim, Plaintiff demands judgment against Defendant in an amount to be determined according to proof at trial, but believed to be at least $1,000,000.00;

(ii) on the second claim, Plaintiff demands a declaration rescinding the Amendment and declaring that the Amendment is void *ab initio*.

(iii) awarding plaintiff its reasonable costs and attorneys' fees incurred in connection with this lawsuit;

(iv) awarding pre- and post-judgment interest on such amounts, according to law; and

(v) such other and further relief as may be just, proper and equitable.

Dated: New York, New York
January 10, 2017

**WACHTEL MISSRY LLP**

By: _____
Evan S. Weintraub
David Yeger
One Dag Hammarskjold Plaza
885 Second Avenue, 47th Floor
New York, New York 10017
(212) 909-9500
(212) 371-0320 (fax)
weintraub@wmllp.com
dyeger@wmllp.com

*Attorneys for Plaintiff*
